UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

MICHAEL WAYNE DAVIS, JR.

CRIMINAL ACTION

NO. 13-26-BAJ-SCR

**RULING AND ORDER**

This matter is before the Court on a Motion (doc. 14) by Defendant, Michael Wayne Davis, Jr., to Suppress any and all evidence seized from a search of his residence, including statements obtained from him in connection with the search. The government opposes the Motion (doc. 20). An evidentiary hearing on this matter was held on May 14, 2013. Considering the evidence and arguments presented by both parties, the Court determines that the Motion must be granted in part and denied in part for the following reasons.

**BACKGROUND**

The Indictment charges Defendant Michael Wayne Davis, Jr. with one count of Possession of a Firearm by a Convicted Felon, in violation of Title 18 U.S.C. § 922(a)(1) and one count of Possession of Hydrocodone, a Schedule III Controlled Substance, in violation of Title 21 U.S.C. § 844(a) (doc. 1).

On February 2, 2012, Detective Kevin Heinz of the Baton Rouge Police Department applied to a commissioner of the 19th Judicial District Court, East Baton Rouge, Louisiana, for a search warrant of the residence at 3044 Elgin

Street in the city of Baton Rouge. The 3044 Elgin Street residence was believed to be the residence of a juvenile, D.W., who was under investigation.

According to the affidavit for the warrant, the evidence supporting the issuance of the search warrant stemmed from the detective's investigation of the burglary of a vehicle that occurred nearly four years earlier on March 16, 2008 (*Id.*). The search warrant asserted that several items from the burglary would be found at 3044 Elgin Street in Baton Rouge, including: (1) one "Gucci" purse; (2) one "Creative" MP3 player; (3) one Boost Mobile cellular telephone by Motorola; (4) one Louisiana identification card in the name of the burglary victim; and (5) the body of a juvenile named D.W. (*Id.*).

According to the affidavit supplied by Detective Heinz, the Baton Rouge Police Department analyzed the prints from the 2008 burglary and, in late March 2011, conducted a direct comparison to the known prints of D.W. The prints analysis revealed that the left middle fingerprint taken from the car matched D.W.'s middle fingerprint (doc. 20, at 2). Law enforcement established, through records obtained from the school system, that D.W. resided at the location specified in the affidavit supporting the warrant (*Id.*).

The Commissioner issued the warrant the same day, authorizing the search of the 3044 Elgin Street residence (USA Ex. 1). Prior to executing the warrant, Detective Heinz learned that Defendant Michael Wayne Davis, Jr., also resided at 3044 Elgin Street, that his name was listed on a utility bill related to the address, and that Davis is a convicted felon and was on active parole supervision

for burglary (doc. 20, at 3). On February 9, 2012, at approximately 6:00 a.m., officers executed the warrant. D.W. was found in the residence and was immediately arrested. Officers also located Defendant Davis in the residence and found weapons, handgun ammunition, and hydrocodone in Defendant Davis' bedroom (doc. 20, at 6, 18). Because detectives had previously determined that Defendant Davis was felon, he was subsequently arrested.

Detectives further recovered items similar to the type and category specified in the warrant including: (1) a designer labeled purse; (2) a cellular phone; and (3) documents containing names and social security numbers that were not associated with the occupants of the home nor with the victim of the 2008 burglary (doc. 20, at 10). Notably, the search failed to recover any of the items listed in the affidavit supporting the search warrant, other than D.W. After Defendant Davis was given his *Miranda* rights, he was interrogated by police at the residence as well as at the violent crimes unit approximately two hours later.

An evidentiary hearing on this matter was held on May 14, 2013. The government presented two witnesses: Detective Kevin Heinz (Detective Heinz) of the Baton Rouge Police Department, and Corporal Jeremy Michael Walker (Corporal Walker), a member of the Special Weapons and Tactics (SWAT) team. Corporal Walker was a member of the SWAT team that executed the search warrant on February 9, 2012.

## ANALYSIS

I.  **STANDARD OF REVIEW**

The Fourth Amendment provides, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause exists when the facts and circumstances described in the search warrant application lead a person of reasonable caution to believe that a specifically described item subject to seizure will be found in the place to be searched. *See Brinegar v. United States,* 338 U.S. 160, 175–76 (1949). In order to issue a search warrant, a magistrate must determine that probable cause exists based on the totality of the circumstances. *See Bennett v. City of Grand Prairie,* 883 F.2d 400, 404 (5th Cir. 1989).

The Supreme Court has recognized that "the Fourth Amendment does not require that the warrant set forth the magistrate's basis for finding probable cause, even though probable cause is the quintessential 'precondition to the valid exercise of executive power.'" *United States v. Grubbs,* 547 U.S. 90, 98, 126 S. Ct. 1494, 1501, 164 L.Ed.2d 195 (2006). Courts are required to assess the validity of a warrant based on the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing judge. *Maryland v. Garrison,* 480 U.S. 79, 85, 107 S. Ct. 1013, 94 L.Ed.2d 72 (1987). Circuit courts have demonstrated the longstanding view that a court may not arrive at probable

cause for a search warrant simply by piling hunch upon hunch. *Poolaw v. Marcantel*, 565 F.3d 721, 729 (10th Cir. 2009).

In this case, Defendant has filed his Motion on the grounds that "any and all evidence seized from the search of 3044 Elgin Street, on February 9, 2012, including statements obtained from him in connection with this search were obtained in violation of his Fourth and Fourteenth Amendment rights (doc. 14-1, at 4)." Specifically, Defendant challenges the February 9, 2012 search on the grounds that the evidence relied upon for the warrant was stale (doc. 14-1, at 3-4). Thus, Defendant argues that the Commissioner's decision to issue a search warrant was both arbitrary and unreasonable. The Court discusses each issue in turn.

## A. SUPPORTING AFFIDAVIT AND STALENESS

Because Defendant challenges the validity of the search warrant that police relied upon when they searched Defendant's residence, the Court first turns to the affidavit supporting the search warrant.

### 1. Supporting Affidavit

It is axiomatic that an affidavit supporting a search warrant enjoys a presumption of validity. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). To defeat this presumption, a defendant must show that "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth; and (2) the remaining portion of the

affidavit is not sufficient to support a finding of probable cause." *United States v. Brown,* 298 F.3d 392, 395 (5th Cir. 2002).

Here, the Court finds that there was no evidence presented at the hearing to suggest that allegations in the supporting affidavit were deliberate falsehoods.[1] The Court further finds that allegations that D.W. was at the 3044 Elgin Street residence were truthful. Whether some of the allegations in the affidavit where made with reckless disregard for the truth, however, is a harder question.

In this case, Defendant principally challenges the information found in the affidavit which dates back to a burglary nearly **four years** earlier (doc. 14-1, at 1). Thus, the Court next turns to the issue of staleness.

### 2. Staleness

Staleness is determined by the facts of each case, rather than by a mechanical counting of the time between the events alleged in an affidavit and the issuance of a warrant. *See United States v. Webster,* 734 F.2d 1048, 1056 (5th Cir. 1984). Moreover, the Fifth Circuit has articulated a two part test for staleness:

> "Two considerations have consistently appeared in this court's opinions on the issue of staleness. First, if the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale. Second, the

---

[1] No evidence supported the assertion that false allegations were made to the Commissioner.

nature of the evidence sought is also relevant. Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched."

*United States v. Pena-Rodriguez,* 110 F.3d 1120, 1130 (5th Cir. 1997); *see also United States v. Alvarez,* 451 F.3d 320, 332 (5th Cir. 2006).

Here, the Court finds no evidence of a long-standing, ongoing pattern of criminal activity; thus, the Court turns to whether the evidence in support of the affidavit could lead a person of reasonable caution to believe that the specifically described items subject to seizure would be found at the residence. The Court finds that the facts and circumstances described in the search warrant application could lead a person of reasonable caution to believe that D.W. would be found at the residence.[2] Thus, there was sufficient probable cause for the issuance of the search warrant as to D.W.

However, no probable cause existed to support the issuance of the warrant for the other items listed in the search warrant. For reasons to follow, the Court concludes that the other items listed in the warrant could not reasonably be expected to be kept at Defendant's residence for the amount of time that elapsed between the burglary and the search. Thus, all items seized pursuant to the

---

[2] This is based in large part upon the then current East Baton Rouge Parish school records.

search warrant that were not in plain view, other than D.W., are suppressed. The Court concludes this for several reasons.

First, probable cause existed with regard to D.W., because recent information showed that he was a resident of 3044 Elgin Street in Baton Rouge, and he was a subject of the search.[3] The government asserts, and the Court agrees, that probable cause existed because D.W. was one of the subjects of the search and the information pertaining to his whereabouts was fresh.

Detective Heinz, in support of the warrant, cited the following grounds for the search for D.W. at the residence: (1) D.W. was a suspect in a recent burglary; (2) current East Baton Rouge Parish school records showed that D.W. lived at 3044 Elgin Street; (3) other law enforcement officers, who were familiar with D.W., believed he resided at the address; and (4) D.W. had an active custody/arrest warrant for the 2008 burglary (doc. 20, at 5).

Thus, considering the facts and circumstances described in the search warrant application, a person of reasonable caution could reasonably expect D.W. would have been found at Defendant's residence at the time of the search.[4]

---

[3] The Court notes that the detectives specifically listed D.W. in the search warrant as a subject of the search (USA Ex. 1). In addition to the search warrant, the detectives had a verified complaint and order for the arrest of D.W.

[4] At the evidentiary hearing for this matter, Detective Heinz explained that a "no-knock" warrant was issued to enable officers to enter the residence without knocking or announcing their presence. Detective Heinz asserted that the "no-knock" warrant was required for the safety of the officers serving the warrant because: (1) there were reports that D.W. was actively involved with a street gang in the area; and (2) there was a history of violence by D.W. and his mother with police officers on prior occasions. The detective further testified that other persons residing at 3044 Elgin Street also had criminal histories. The evidence at the hearing, when viewed as a composite rather than in isolation, only minimally established a finding of reasonableness for the issuance of a "no-knock" warrant. The Court declines to make an extensive inquiry into the reasonableness of the issuance of a "no-knock" warrant under the circumstances, as no facts were alleged which would have required a hearing on the issue and no

Second, the Court is not persuaded that certain other items listed in the warrant could reasonably be expected to be kept at Defendant's residence for the amount of time that elapsed between the burglary and the search. The Court finds that there was an extremely low likelihood that any items of the 2008 burglary would likely be found with D. W. at 3044 Elgin Street in Baton Rouge ***nearly four years later***.

The Court further finds the government's assumption that D.W. would have held on to the items simply because he was a juvenile is unpersuasive. The government asserts that because D.W. was a minor residing with his mother, it was reasonable to conclude that the "Gucci" purse and the MP3 player were not disposed of.[5] The government points out that a relatively young minor would be more likely to keep the music player and that D.W.'s mother, who also resided with him, could have kept the purse. This assumption is not one that the Court is willing to accept in its analysis, and the government has failed to point to any facts or case law to support its contention.

The threshold issue is whether such items would likely be kept for a period of years, such that a person of reasonable caution could reasonably expect that the items would have been found at Defendant's residence. The Court finds that the items specified in the warrant, other than D.W., could not reasonably have remained in a suspect's residence for a period of approximately four years after

---

arguments were offered on the reasonableness of the no-knock entry by police. Defendant only challenges the warrant on the grounds that the evidence relied upon for the warrant was stale.
[5] Other items listed in the warrant were a Boost Mobile cellular phone by Motorola and a Louisiana identification card in the name of the victim of the burglary.

9

the auto burglary. The Court concludes that probable cause did not exist with regard to the other items specified in the warrant for the following reasons.

As a preliminary issue, neither party cites to any case law showing that these particular items are likely or are unlikely to be maintained for long periods of time at one's residence after a crime. While cases were not cited in the parties' briefs, the *U.S. v. Freeman*[6] case was offered at the evidentiary hearing of this matter. As noted at the hearing, circuit courts have analyzed whether specific items associated with criminal activity are likely to be maintained for longer periods.

For example, in *U.S. v. Freeman*, the Fifth Circuit held that passports, identification papers, and bank records are the sort of items which would normally be kept at one's personal residence. 685 F.2d 942, 952 (5th Cir. 1982). The court also concluded that they are the sort of items which could be reasonably expected to be kept there for a long period of time. *Id*.

In this case, an identification document was one of the items specified in the search warrant. However, as Defendant argued at the evidentiary hearing, nothing suggests that the document sought in this case is of the kind described in *Freeman*. In *Freeman*, the court found that probable cause existed to support a search for the passports, personal identification, and bank records after many **months**, largely because the Defendant was a person with many aliases. *Id*. at

---

[6] *U.S. v. Freeman* 685 F.2d 942, 952 (5th Cir. 1982).

10

949. This factor is not present in this case, and the Court further notes that this case involves a period of *years* and not months.[7]

Thus, the Court finds that no other factor militates in favor of a finding that certain items listed in the warrant could reasonably be expected to be kept at Defendant's residence for the amount of time that elapsed between the burglary and the search. Therefore, the Court finds that the State Court Commissioner's issuance of the warrant was without probable cause for all items other than the body of D.W.

Accordingly, all items seized pursuant to the search warrant that were not in plain view, other than D.W., are suppressed. Because the government argues that the seizure of the evidence found during the protective sweep was constitutionally permissible pursuant to the plain view doctrine, the Court next turns to an analysis of the search under the plain view doctrine. The Court further analyzes whether the circumstances which gave rise to the seizure of the evidence makes the evidence admissible under the search incident to arrest doctrine.

---

[7] Other circuit courts have also analyzed the issue, finding that a handgun is evidence that could be reasonably expected to be kept at a suspect's residence long after a crime. *See, e.g., United States v. Lancaster,* 145 F. App'x 508, 513 (6th Cir. 2005) (deciding that affidavit was not stale because firearms are not perishable and that "those who own and possess firearms generally maintain them for long periods of time") (internal quotations omitted); *United States v. Jones,* 41 F. App'x 536, 538-39 (3rd Cir. 2002) (finding affidavit not stale and noting that, "even absent any direct evidence of their location, firearms are likely to be kept in a suspect's residence") (internal quotations and citation omitted). However, as demonstrated by these firearms cases and the *Freeman* case, none of the items specified in the warrant in this case, are of the kind and type that would likely remain with Defendant for a significant period of time.

## B. PLAIN VIEW, SEARCH INCIDENT TO ARREST, AND GOOD FAITH RELIANCE EXCEPTIONS

The Court next addresses the government's argument that Defendant's Motion must be denied because the evidence seized during the protective sweep was found in plain view, thereby obviating the need for a warrant. *See United States v. Waldrop*, 404 F.3d 365 (5th Cir. 2005) (citing *United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998)). Moreover, the government argues that the post arrest warrantless sweep of the area was permissible under the search incident to arrest exception to the warrant requirement. *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006), *Cert denied*, 549 U.S. 1273, 127 S. Ct. 1505, 167 L.Ed.2d 243 (2007).

Finally, the government further argues that even if the warrant is deemed invalid, the evidence should not be suppressed because the officers acted reasonably and in good faith reliance on the search warrant. *See United States v. Shugart,* 117 F.3d 838, 843 (5th Cir. 1997).

### 1. Plain View Doctrine

The Court first addresses the plain view doctrine. "The Fourth Amendment declares the right to be secure against unreasonable searches." *Creamer v. Porter,* 754 F.2d 1311, 1318 (5th Cir. 1985). As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns. *Id.* "An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects

and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine." *United States v. Bills,* 555 F.2d 1250, 1251 (5th Cir.1977).

The plain view doctrine will justify such a seizure if (1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items. *Horton v. California,* 496 U.S. 128, 136–37, 110 S. Ct. 2301, 110 L.Ed.2d 112 (1990).

Here, considering the evidence and arguments presented by both parties, the firearms, ammunition, and controlled substances that were seized in the bedroom should not be suppressed. According to the government, in the course of making the protective sweep of the residence, the SWAT team found Defendant Davis in a bedroom, and, in plain view, the officers saw a number of firearms, live ammunition, and drugs (doc. 20, at 17). At the hearing of this matter, both officers testified that when a SWAT team executes a search warrant, the officers conduct a complete sweep of the home to determine if there are any dangers to the officers.

In this case, the guns were found in plain view approximately two feet from Defendant in an open closet. The drugs were found two feet from the officer on the dresser (night stand). Because of the prior knowledge that Defendant Davis was a convicted felon and could not possess firearms, the incriminating nature of the items was immediately apparent to the detectives. Thus, the detectives had

13

probable cause to seize the items and place Davis under arrest. Thus, the Court finds that the seizure of the evidence found during the protective sweep was properly discovered and seized pursuant to the plain view doctrine.

These items include a WASR, model 10/63, 7.62x39 caliber rifle, S/N TF04151 (also known as an AK-47), and a Colt, Mark III, .22 caliber revolver, S/N Y23573 located in Defendant's bedroom closet (doc. 20-2, at 1, 21-22). These items further include several .380 rounds of ammunition, a .380 caliber magazine, and dosages of hydrocodone located on Defendant's dresser top (*Id.*).

## 2. Search Incident to Arrest Doctrine

The Court next addresses the search incident to arrest doctrine. The Supreme Court has held that an arrest may be accompanied by a search incident to that arrest, to prevent the arrestee from accessing a weapon or destroying evidence. *United States v. Green,* 324 F.3d 375, 378 (5th Cir. 2003) (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969)).

This type of search is limited to the arrestee's person and to the area within his immediate control. *Id.* In some circumstances, police may also conduct a protective sweep of the area around an arrest scene, which may be "no more than a cursory inspection of those spaces where a person may be found" and "may last no longer than is necessary to dispel the reasonable suspicion of danger" nor "longer than the police are justified in remaining on the premises." *United States v. Gould,* 364 F.3d 578, 587 (5th Cir.) (en banc) (quoting *Maryland v. Buie,* 494 U.S. 325, 335-36, 110 S. Ct. 1093, 108 L.Ed.2d 276 (1990))

(alteration in original), *cert. denied,* 543 U.S. 955, 125 S. Ct. 437, 160 L.Ed.2d 317 (2004).

Here, the Court must conclude that the search of the dresser drawer containing a hat with live ammunition and the search for the second handgun in the closet were not justified as a search incident to arrest. According to the evidence and arguments presented by both parties, Davis was already arrested and detained in handcuffs when detectives opened the dresser drawer where they found a black hat with live ammunition therein. Additionally, Defendant was already in handcuffs when the detectives searched the closet and found a second handgun under clothing.

An arrest may be accompanied by a search incident to that arrest to prevent the arrestee from accessing a weapon or destroying evidence. *Green,* 324 F.3d at 378. However, nothing in the facts suggests that Defendant had the ability to access a weapon or to attack the several officers present at the time of the arrest. Further, searching through a dresser drawer and a closet, under these circumstances, was far more than a cursory inspection of the spaces where Defendant was found.

The Court finds that because Defendant was handcuffed and detained when the officers searched the dresser drawer and closet, the search was no longer necessary to dispel any reasonable suspicion of danger. Accordingly, the evidence seized after Defendant was handcuffed and detained must be suppressed.

These items include: (1) the Taurus 454 Raging bull revolver that detectives found after searching under Defendant's clothes within the closet (Doc. 20-2, at 21); (2) all items found in the "black skull cap" within the top drawer of Defendant's dresser that contained numerous live bullets of various calibers and a pistol magazine (*Id.*); and (3) all other items collected and photographed that were within Defendant's dresser drawer (*Id.*).

### 3. Good Faith Reliance Exception

Finally, the Court addresses the government's argument that the officers' reliance on the warrant was objectively reasonable, and that the good faith exception to the exclusionary rule applies. In the legal and factual conclusions set forth in this ruling, the Court has found that the officers' seizure of certain items was supported by the plain view doctrine.

Additionally, the Court has suppressed certain other evidence as it was not permissible under the search incident to arrest exception to the warrant requirement. Thus, the final threshold issue is whether the Court should nonetheless admit evidence not found in plain view due to the officers' good faith reliance on the search warrant. The Court finds that all items seized pursuant to the search warrant that were not in plain view, other than D.W., must nevertheless be suppressed, even in light of the good faith exception to the exclusionary rule.

The good faith exception provides that "evidence obtained by law enforcement officials' actions in objectively reasonable good-faith reliance upon a

search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997); see also *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Craig*, 861 F.2d 818 (5th Cir. 1988).

The Fifth Circuit has held that the "issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to a warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). However, the good faith exception does not apply if the affidavit supporting the warrant is bare bones, *i.e.*, the affidavit is "so lacking in indicia of probable cause as to render belief in its existence unreasonable." *Craig*, 861 F.2d at 821.

Here, the Court finds that the information supporting the officers' search warrant for the 3044 Elgin Street residence fails to meet even the "bare bones" standard. As previously noted, there was sufficient probable cause for the issuance of the search warrant as to D.W. However, the government has failed to produce any evidence demonstrating that the officers were reasonable in seeking a search warrant for items from a burglary that occurred **nearly four years earlier**. Additionally, none of the supporting information in the affidavit relied upon for the issuance of the warrant made such a search reasonable.

Further, the government failed to produce any evidence demonstrating that detectives searched Defendant's dresser and closet in good faith reliance on the

17

search warrant. At the hearing, neither officer testified to searching the closet or the dresser for any of the items specified in the warrant. On the contrary, the officers' search of Defendant's dresser and closet appeared to be wholly separate from the search warrant and the items specified within the search warrant's four corners.

Therefore, even in light of the good faith exception to the exclusionary rule, the Court finds that all items seized pursuant to the search warrant that were not in plain view, other than D.W., must nevertheless be suppressed.

### C. DEFENDANT'S STATEMENTS AND *MIRANDA*

Finally, the Court finds that Defendant's statements in connection with the search of his residence and his arrest should not be suppressed. In order for incriminating statements to be admissible, the government must show that the defendant was informed of the *Miranda* rights and the waiver was the product of "a free and deliberate choice." *United States v. Collins,* 40 F.3d 95, 98 (5th Cir. 1994).

Here, Defendant only challenges the warrant on the basis that the evidence relied upon for the warrant was stale. Defendant makes no argument alleging that: (1) he was not properly *Mirandized*; or (2) his statements were not the product of free and deliberate choice.

The government, in contrast, argues that Defendant Davis was properly *Mirandized* and made several voluntary, post arrest incriminating statements (doc. 20, at 6). Because Defendant Davis fails to assert any arguments alleging

violations of his *Miranda* rights, the Court finds that Defendant's statements in connection with the search of his residence and his arrest should not be suppressed.

### D.  THE COURT'S FINDINGS

Accordingly, because a person of reasonable caution could not reasonably expect all of the search warrant items, other than the body of D.W., to be present at Defendant's residence, Defendant's Motion to Suppress is granted in part and denied in part.  The Court finds that the underlying affidavit did not establish probable cause in support of the entire warrant.  Thus, all items seized pursuant to the search warrant that were not in plain view, other than D.W., are suppressed.

Further, because Defendant Davis fails to present any evidence to prove violations of his *Miranda* rights, the Court finds that Defendant's statements in connection with the search of his residence and his arrest should not be suppressed.  To the extent that Defendant seeks to suppress such statements, his motion is denied.

### CONCLUSION

The Court concludes that all items seized pursuant to the search warrant that were not in plain view, other than D.W., are suppressed.  Specifically, the items suppressed include: (1) the Taurus 454 Raging bull revolver that detectives found after searching under Defendant's clothes within the closet (doc. 20-2, at 21); (2) all items found in the "black skull cap" within the top drawer of

Defendant's dresser that contained numerous live bullets of various calibers and a pistol magazine (*Id.*); and (3) all other items collected and photographed that were within Defendant's dresser drawer (*Id.*).

The Court further finds that Defendant's statements in connection with the search of his residence and his arrest are not suppressed.

For the foregoing reasons, Defendant's Motion to Suppress all evidence seized from the search of 3044 Elgin Street (doc. 14) is **GRANTED in part** and **DENIED in part** for the reasons set forth in this ruling.

Baton Rouge, Louisiana, June __19__, 2013.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA